James **COOPER**, Plaintiff-Appellant,

v.

Otis R. **BOWEN**,* Secretary of Health and Human Services, Defendant-Appellee.

No. 85–6159.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1987.

Decided April 21, 1987.

Sneed, Circuit Judge, dissented and filed opinion.

---

* Pursuant to Fed.R.App.P. 43, we substitute the name Otis Bowen, successor to the original appellee, Margaret Heckler, as Secretary of the Department of Health and Human Services.

Nancy E. Wever, San Francisco, Cal., for defendant-appellee.

Stephen Gorey, San Diego, Cal., for plaintiff-appellant.

Before SNEED, FARRIS and NOONAN, Circuit Judges.

FARRIS, Circuit Judge:

## INTRODUCTION

James Cooper seeks disability benefits under Title XVI of the Social Security Act because of chronic alcoholism. An administrative law judge for the Department of Health and Human Services denied benefits. The ALJ found that Cooper's condi-

tion did not prevent him from undertaking gainful activity. The Appeals Council declined to rehear Cooper's claim, so the ALJ's decision became the final decision of the Secretary of Health and Human Services. Under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Cooper appealed to the district court, which granted summary judgment to the Secretary. This appeal followed.

## BACKGROUND

At the time of his hearing in 1984, Cooper was 49 years old with an eighth grade education. He has not worked since a back injury in 1974. He last worked as a machine assembler. In January 1984, a psychiatrist diagnosed Cooper as an alcoholic. At that time, Cooper reported that he drank from a pint to a quart of whiskey every day and had suffered blackouts. He drank even after taking Antabuse, a drug designed to curb drinking by inducing nausea when mixed with alcohol. The examining psychiatrist concluded that Cooper's alcoholism was "moderately severe." He noted that Cooper was able to help with domestic chores, was "competent to understand simple instructions and appear[ed] to get along reasonably well with potential co-workers." He recommended that Cooper not be given control of his own money because he would spend it on alcohol. In February 1984, another doctor's report diagnosed Cooper as suffering from "chronic alcoholism."

In February 1984, a medical examiner for the state social security agency reviewed Cooper's medical records and concluded that they did not indicate significant restrictions on Cooper's daily activities. The examiner restricted Cooper to light lifting and limited bending and reaching with the left arm.

In May 1984, at a hearing before an ALJ on his claim, Cooper testified that his alcoholism kept him from working, that he drank all he could get despite getting nauseous from Antabuse, and that he had been drinking for two and a half years. His wife gave similar testimony. The ALJ made several findings on Cooper's alcohol-

ism. He noted that "the claimant did not appear to be under the influence of alcohol" even though he had testified to drinking a pint of whiskey before the hearing. He also found that the medical record "fails to establish that the claimant has suffered any serious end organ damage as a result of his alcohol ingestion." Cooper's alcoholism did not constitute a "non-exertional limitation," because he did not prove that he was "so caught up in a pattern of alcohol abuse that he is either unable to stop drinking, or has demonstrated an inability to engage in substantial gainful activity." The ALJ concluded that Cooper could not perform his past work as a machine assembler, but that he had the residual, functional capacity to perform a full range of light work. Cooper was therefore not disabled.

In June 1984, shortly after the hearing, a vocational rehabilitation counselor reviewed Cooper's medical records and concluded that his drinking was "an impairment to occupational functions." While Cooper could assist with household tasks, the counselor's report stated, such undemanding duties "are of no use to an employer or operator of a business." This report indicated that treatment to control Cooper's alcoholism would make him fit for employment.

The counselor's report, along with the rest of the record, was submitted to the Appeals Council. The Council found no reason to rehear the case.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). We must determine whether the court applied the law correctly and whether substantial evidence supports the findings of the ALJ. *Young v. Heckler*, 803 F.2d 963, 966 (9th Cir.1986).

## DISCUSSION

1. *Application of the Medical-Vocational Guidelines*

We first consider Cooper's argument that the ALJ erred in applying the

Secretary's Medical-Vocational Guidelines known as the "grid." The grid helps the Secretary determine whether jobs appropriate to various levels of functioning exist in the national economy. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985). The grid is applicable to both exertional and nonexertional claims. *Razey v. Heckler,* 785 F.2d 1426, 1430, *amended,* 794 F.2d 1348 (9th Cir.1986); *Odle v. Heckler,* 707 F.2d 439, 440 (9th Cir.1983). Cooper is incorrect in arguing that the ALJ used the grid to determine whether he was impaired. The ALJ only turned to the grid after considering, and rejecting, Cooper's claim that alcoholism was a nonexertional limitation on his activity. This was a proper use of the grid. *See Razey v. Heckler,* 785 F.2d at 1430.

2. *Chronic Alcoholism as an Impairment*

■ Of greater concern is the ALJ's determination that Cooper's alcoholism was not a non-exertional limitation. Alcoholism by itself may constitute such a limitation if it prevents a claimant from engaging in substantial gainful activity. *Johnson v. Harris,* 625 F.2d 311 (9th Cir.1980); *Griffis v. Weinberger,* 509 F.2d 837 (9th Cir.1975). Physiological damage from alcohol consumption—end organ damage, blackouts, hallucinations or other psychotic effects— is relatively easy to observe and document. Such damage was once required to prove a disability based on alcoholism. *See, e.g., Osborne v. Cohen,* 409 F.2d 37, 39 (6th Cir.1969) (relying on 20 C.F.R. § 404.-1519(c)(2)(iii), since repealed); *Hays v. Finch,* 306 F.Supp. 115 (W.D.Pa.1969) (same).

More recently, however, the uncontrollable addiction to alcohol—so uncontrollable as to impair the alcoholic's gainful activity—has been held to be disabling, even with no evidence of physiological damage. *McShea v. Schweiker,* 700 F.2d 117, 119 (3d Cir.1983); *Ferguson v. Schweiker,* 641 F.2d 243, 249 (5th Cir.1981); *Johnson v. Harris,* 625 F.2d at 313 ("The Secretary contends ... that the inability to stop drinking is an element of disability due to alcoholism...."); *Hicks v. Califano,* 600 F.2d

1048, 1051 (4th Cir.1979); *Lewis v. Califano,* 574 F.2d 452 (8th Cir.1978). As the Fifth Circuit has stated, "[b]efore a finding of disability due to alcoholism can be made, it must first be shown that the claimant is addicted to alcohol and does not have the ability to control its use voluntarily." *Ferguson v. Schweiker,* 641 F.2d at 249.

■ The burden of establishing that he is a chronic alcoholic is upon the claimant. A diagnosis of chronic alcoholism usually means that the alcoholic is addicted to alcohol and is unable voluntarily to control alcohol use. As we have said before, "some alcoholics can stop; more cannot." *Griffis v. Weinberger,* 509 F.2d at 838 n. 1. We therefore adopt the view of the Third and Fourth Circuits that the Secretary must adequately inquire whether a diagnosed alcoholic *can* control his or her drinking. "[W]here there is evidence of alcohol abuse, the Secretary must inquire whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use." *McShea,* 700 F.2d at 119 (quoting *Hicks v. Califano,* 600 F.2d at 1051). The Secretary, or the ALJ whose decision the Secretary adopts, must make a specific finding on the claimant's ability to control his or her drinking and its disabling effect. *Id.; Orr v. Heckler,* 737 F.2d 770, 771 (8th Cir.1984); *Gordon v. Schweiker,* 725 F.2d 231, 236 (4th Cir.1984).

■ Because the ALJ failed to apply properly this legal standard for finding a disability based on the addictive effects of alcoholism, we cannot affirm the grant of summary judgment in Cooper's case. In determining whether Cooper's alcoholism was severe enough to constitute a non-exertional limitation, the ALJ found that the objective, physiological effects did not include "end organ damage." Such a finding is not dispositive. The ALJ also found that Cooper had not shown that he was "unable to stop drinking." Since Cooper offered evidence on the issue, which, if believed, would satisfy a trier of fact, it was error for the ALJ to make a *finding* on a motion for summary judgment *unless* he also spec-

ified what he relied upon to reject Cooper's showing as a matter of law.

The ALJ must inquire adequately into Cooper's ability to control his drinking. There was no rebuttal of the testimony by Cooper and his wife as to the longevity and severity of his drinking. Drinking from a pint to a quart of whiskey a day for two and a half years is a pattern of consumption that "merit[s] further evidentiary attention." *Stuart v. Califano,* 443 F.Supp. 842, 845 (W.D.Mo.1978) (requiring the Secretary to inquire further into claimant's habit of drinking a fifth of whiskey a day for a year or more). No evidence was presented that Cooper could control his alcohol consumption. There was no evidence, for example, that Cooper had been able to stop his drinking in the past. *Cf. Gerst v. Secretary of Health and Human Services,* 709 F.2d 1075 (6th Cir.1983). Cooper's testimony that he continued to drink while taking Antabuse tends to support a finding of involuntary alcoholism. The testimony of Dr. Morrison that Cooper would not be able to control spending his money on alcohol also supports a finding of involuntary alcoholism.

The ALJ's observations of Cooper's demeanor at the hearing—that he was coherent, alert, and did not appear intoxicated—were "not determinative of the relevant issue of voluntariness." *Andrews v. Heckler,* 573 F.Supp. 1089, 1093 (E.D.Pa.1983). Similarly, evidence that Cooper could assist with some household chores was not determinative of disability. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981).

We remand to the Secretary for a factual determination of the issue of Cooper's ability to control his drinking. The appropriate inquiry will not be whether Cooper *should* be able to control his alcohol abuse or *says* that he can or cannot control it, but whether he "is addicted to alcohol and, as a consequence, has lost the ability to control its use," *Purter v. Heckler,* 771 F.2d 682, 698 (3d Cir.1985) (quoting *Hicks v. Califano,* 600 F.2d at 1051), and whether its use

precludes his obtaining and maintaining employment.

### 3. *Conditioning Benefits on Treatment*

On remand, the Secretary must also consider the option of conditioning benefits on Cooper's receiving treatment for his alcoholism. Given the nature of alcoholism, awarding benefits may not help the claimant if he or she spends the money on alcohol, exacerbating the disabling condition. Several Circuits have held that the Secretary may handle this problem, unique to alcohol and drug abuse, by conditioning benefits on the claimant's receiving treatment for alcoholism. *Purter v. Heckler,* 771 F.2d 682, 699 (3d Cir.1985); *Mellon v. Heckler,* 739 F.2d 1382, 1383–84 (8th Cir. 1984); *McShea v. Schweiker,* 700 F.2d 117, 119 (3d Cir.1983); *Adams v. Weinberger,* 548 F.2d 239, 245 (8th Cir.1977); *see also Gray v. Califano,* 448 F.Supp. 1142, 1145 (S.D.Cal.1978). Disability benefits may be paid to a representative payee rather than directly to the claimant, and this payee may be an institution treating the claimant. *See, e.g., McShea,* 700 F.2d at 699 n. 20. We now endorse this approach, and require the Secretary to consider it on remand if Cooper is found to be sufficiently disabled to qualify for benefits.

REVERSED and REMANDED.

SNEED, Circuit Judge, dissenting:

I would affirm the judgment of the district court.

The majority recognizes that an uncontrollable addiction to alcohol may not prevent the person so addicted from undertaking gainful activity. *See supra* p. 559. *A fortiori* one who can control the use of alcohol is not for that reason alone prevented from undertaking gainful activity. The issue in both instances is whether the seeker of disability benefits can or cannot undertake gainful activity. Controllability or no is certainly relevant to this issue. Uncontrollable addiction is strong evidence of inability to undertake gainful activity. It is not, however, conclusive evidence. Moreover, as the majority points out, a condition precedent to establishing disability by rea-

son of alcoholism is a showing that it is uncontrollable. *See supra* p. 560.

In this case the Administrative Law Judge found that Cooper had established neither that his alcoholism was uncontrollable nor that he was unable to undertake gainful activity. The latter finding is supported by substantial evidence. Therefore, I would affirm the judgment below.