19 F.3d 26
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Hector CAMARENA, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-55266.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 9, 1993.*
Decided Feb. 28, 1994.
 
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Hector Camarena appeals pro se from the district court's grant of summary judgment upholding the Secretary of Health and Human Services' ("Secretary") denial of his claim for disability benefits. In its decision, the district court upheld the determination of the Administrative Law Judge ("ALJ"), adopted by the Secretary, that Camarena had not shown that he was unable to resume his past relevant work and thus was not entitled to disability benefits or supplemental social security income ("SSI") under Title II (42 U.S.C. Secs. 401-03) and Title XVI (42 U.S.C. Secs. 1381-83) of the Social Security Act, respectively. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We vacate the grant of summary judgment and remand to the district court with directions to remand the case to the Secretary for reconsideration of Camarena's claim of psychological impairment based on chronic alcohol abuse.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Camarena's current application for benefits, filed on February 4, 1988, is his second application. In the first application, filed on September 22, 1986, Camarena claimed that he suffered from disabling back pain and vision troubles as a result of a fall down a stairway on August 23, 1985. Camarena's first application was denied on initial review and, when he failed to appear for scheduled consultative exams, his request for reconsideration was also denied. This denial was dated February 23, 1987.
 
 
 4
 In his current application, Camarena again claims disabling back pain and vision troubles, and again claims that his disability began with his fall down a stairway in August 1985. In addition, however, Camarena now claims that he suffers from disabling mental problems, consisting of depression, cognitive difficulties, and alcohol abuse.
 
 
 5
 Camarena is now 38 years old. He has not been employed since his injury in 1985. Prior to the injury, however, he had worked as a casual lumberyard and dock worker. AR at 78.[1] Camarena testified that he was fired repeatedly from jobs and that the longest he ever held a job was for a year, back in 1978. AR at 39.
 
 STANDARD OF REVIEW
 
 6
 We review de novo a district court's grant of summary judgment. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.1992). We will not disturb the Secretary's findings if they are supported by substantial evidence and the correct legal standards were applied. Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992).
 
 
 7
 A person is considered "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A). The impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques. 42 U.S.C. Sec. 423(d)(3); Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir.1984). The same standard is used for determining whether a claimant is entitled to SSI benefits. See 42 U.S.C. Sec. 1382(c)(3)(A).
 
 
 8
 The claimant bears the initial burden of proving that physical or mental impairments, or a combination thereof, prevent him from engaging in his previous occupation. Gonzalez v. Secretary of Health & Human Services, 784 F.2d 1417, 1419 (9th Cir.1986). The burden then shifts to the Secretary to show that, notwithstanding his or her impairments, "the claimant can engage in other types of substantial gainful work which exist in the national economy." Id.
 
 ANALYSIS
 A. Back Pain and Vision Problems
 
 9
 As noted above, the physical impairments Camarena claims in his current application are identical to those listed on his first application filed in September 1986, and Camarena again seeks benefits as of August 1985, the date of his fall down the stairway. When Camarena failed to appear for the scheduled hearing on his first application, however, the decision on reconsideration, dated February 23, 1987, became the final decision of the Secretary. The ALJ who held the hearing on Camarena's current application concluded that the denial of the first application was res judicata, and, on this basis, ruled that the only issue before him was Camarena's eligibility for benefits from February 24, 1987 forward. The ALJ also concluded that the denial of Camarena's first application created a presumption of continuing nondisability. AR at 9; see also Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir.1985) (final decision of the Secretary on prior application is res judicata). Although we have serious doubts about whether Camarena had a full and fair opportunity to litigate the issues in his first application--Camarena was in jail at the time of his scheduled hearing and made some effort, albeit two days late, to seek a postponement of the hearing, see Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir.1988) (declining to apply res judicata to prior administrative decision, noting that "res judicata should not be applied rigidly in administrative proceedings")--we do not need to address the res judicata issue. We conclude that, even without the application of res judicata or a presumption of continuing disability, both the February 23, 1987 decision denying Camarena's first application and the decision of the ALJ denying the physical impairment claims in Camarena's current application are supported by substantial evidence.
 
 
 10
 Although Camarena's treating physician in late 1985 and early 1986, Dr. Robert Smith, indicated in several brief statements that Camarena was "disabled" from August or December 1985 through October 2, 1986, Dr. Smith did not include any clinical or diagnostic findings to support the statements. See AR at 196-201. All of Camarena's diagnostic tests were negative. X-rays of his lumbosacral spine and ribs in December 1985 were negative, as was a lumbar CT scan in February 1986. AR at 203, 206. More recent medical tests also show no evidence of a disabling back condition. In 1988, Camarena was orthopedically evaluated at government expense by Dr. Virgil Becker. After a battery of tests, Dr. Becker concluded that, although the range of motion in the lumbar spine area was slightly less than normal, Camarena's back was otherwise in good condition. AR at 247-251. At his hearing before the ALJ, moreover, Camarena testified that he had no problems with driving, walking, grocery shopping, or carrying up to forty pounds. Similarly, although Camarena reported intermittent difficulty in seeing, the medical evidence has indicated consistently that his eyes are healthy. Eye exams reveal that he has 20/20 vision. See, e.g., AR at 238, 245.
 
 
 11
 The ALJ found that neither the medical evidence nor Camarena's testimony supported his contention that he suffered from an incapacitating physical impairment. In light of the above test results, this finding is clearly supported by substantial evidence. Moreover, the district court did not err by refusing to accept Dr. Smith's brief and conclusory statements regarding Camarena's back problems as conclusive proof that Camarena was disabled. See Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992) (where there is conflicting medical evidence, ALJ need not accept a treating physician's opinion which is brief and conclusory in form and unsupported by clinical findings).[2]
 
 B. Mental Impairments
 
 12
 Camarena also contends in his current application that he suffers from disabling chronic alcohol abuse, depression, and lapses in memory and concentration, problems that he traces back to a racially-motivated assault against him that occurred while he was training overseas with the Army in 1975. Most of these mental problems do not rise to the level of a disability. All of Camarena's psychiatric reports indicate that although Camarena suffers from depression, his condition does not constitute a disability within the meaning of the Social Security Act. See AR at 240-42 (report of Dr. Paculdo), AR at 252-55 (report of Dr. Lau), AR at 266-70 (report of Dr. Bhoopat), AR at 169-192 (disability determinations by HHS staff physicians). Those same reports, moreover, provide no evidence that Camarena suffers from disabling memory or concentration problems. Camarena has a powerful claim, however, that he suffers from disabling alcohol abuse.
 
 
 13
 "Alcoholism is not per se disabling, but can constitute a disability if it is uncontrollable." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir.1993). Thus, " '[b]efore a finding of disability due to alcoholism can be made, it must first be shown that the claimant is addicted to alcohol and does not have the ability to control its use voluntarily.' " Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir.1987) (quoting Ferguson v. Schweiker, 641 F.2d 243, 248-49 (5th Cir.1981) (alteration in original)). Once the claimant establishes that he suffers from diagnosed alcoholism, Ninth Circuit case law requires that the ALJ make specific findings as to whether the claimant is able to control his use of alcohol and whether alcohol use precludes him from substantial gainful activity. Clem v. Sullivan, 894 F.2d 328, 330-332 (9th Cir.1990). The claimant, however, retains the burden of proving that his condition prevents him from performing his previous occupations. Id.
 
 
 14
 The record is replete with evidence of chronic alcoholism. Both Camarena's personal history and his psychiatric reports show that his condition is serious and ongoing. The record demonstrates that Camarena periodically goes on drinking binges, often becoming violent when drunk, and that he drinks until he blacks out. Camarena drinks up to four quarts of hard liquor at a time, and, when arrested, his blood alcohol levels have been dangerously high. Camarena testified before the ALJ that he has been cited twelve times for alcohol related problems (eight of which were for drunk driving), and that, on at least two occasions, he has recklessly fired a shotgun while drunk. Camarena, of course, missed his hearing before the ALJ on his first application because he was jailed for drunk driving, and missed the opportunity to make oral arguments before this court for the same reason. Although Camarena never brought the matter to the attention of HHS, moreover, his fall down a stairway back in 1985 was the result of drunkenness. See AR at 252, 269. Finally, with the permission of this court, Camarena has attached to his brief Rules Violation Reports showing that, even while in prison, he was sanctioned twice when he failed to return on time from work furloughs because he was drunk.
 
 
 15
 In 1988, Camarena underwent psychiatric evaluation two times at government expense. Both psychiatrists diagnosed a mood disorder and alcohol abuse. The reports, however, differed in the extent of their concerns with alcoholism. The first report, prepared by Dr. Paculdo after an examination on March 19, 1988, concluded that Camarena should be able to maintain a work schedule, interact with supervisors, and make decisions in the work environment. Dr. Paculdo, who stated that Camarena's prognosis was good, did not analyze Camarena's alcoholism, stating only that Camarena would benefit from participating in a vocational rehabilitation program and an alcohol abuse support group such as Alcoholics Anonymous. AR at 240-42.
 
 
 16
 The second psychiatric evaluation, by Dr. Kei-Chun Lau, conducted on August 29, 1988, diagnosed Camarena's alcohol abuse in greater detail. In analyzing Camarena's account of his mental problems, Dr. Lau concluded that the "[p]atient is a binger," and notes that "more careful inquiry ... indicated most of the depression, sadness, and dizziness [symptoms reported to Dr. Lau by Camarena] happened after he stopped drinking for a while." Dr. Lau continued as follows:
 
 
 17
 He doesn't drink all the time; however, he will binge every week or ten days, and when he binges, he drinks very heavily, up to three or four quarts of hard liquor, being drunk continually. After this, he remains sober for a few weeks, during which time he becomes very depressed, jittery, short-tempered, irritable, irrational. Sometimes he hears voices, hearing people call his name, knocking on his door and the phone ringing. Sometimes he will become so depressed that he will be unable to leave his bed, and looses [sic] his appetite. When he is not drinking for a while, he may regain his appetite, becoming less depressed. However, before he comes out of his depression, he will go into another binge. The cycle of boozing and depression has been going on for several years.
 
 
 18
 AR at 252-55.
 
 
 19
 Although the ALJ concluded that Camarena suffers from severe alcohol abuse, he found that Camarena has the ability to control his drinking, and that, despite his alcoholism, Camarena retains the capacity to perform his past relevant work. The ALJ described in some detail the considerations that led him to these conclusions. AR at 11. First, he noted that Camarena had never been treated on a regular basis for alcohol abuse problems and asserted that "an individual's self-serving statements with respect to his symptomatology, without substantiation by medically determinable clinical findings, are not sufficient to establish the presence of a severe impairment." Id. Second, he emphasized the medical findings that described Camarena as alert with sound cognitive and memory skills. Finally, he concluded that "based upon claimant's own testimony that he currently drinks only four times per month, and of his past history of episodic drinking, it is apparent that claimant has the capability to control his drinking." Id.
 
 
 20
 The ALJ's analysis is not persuasive. The fact that Camarena has never been treated for alcohol abuse does not establish that he does not have a severe impairment. Indeed, the fact that Camarena suffers from "severe alcohol abuse" (as the ALJ himself put it) yet has not successfully sought treatment supports the argument that Camarena is unable to control his drinking. The ALJ, moreover, passes over the many contradictions in the record concerning Camarena's relationship with treatment programs. See, e.g., AR at 102 (March 26, 1986 medical report stating that Camarena "wishes detox program"); AR at 155 (report of Camarena's mother dated February 16, 1988 stating that Camarena "attend[s] AA meetings in mornings and afternoons"); AR at 165 (application dated June 18, 1988 in which Camarena lists AA as social group to which he belongs); AR at 161 (Camarena noting that he has quit AA); AR at 267 (medical report dated December 20, 1988 indicating that Camarena "will be attending alcohol program"). The ALJ also passes over inconsistencies in Camarena's accounts of how frequently he drinks. At the hearing, Camarena said he drank four times per month, blacking out after drinking each time. He made a similar comment to Dr. Lau. Although Camarena at times has suggested that he goes for weeks without drinking, he has also reported drinking three times per week, AR at 226, and even daily, AR at 267. There is no pattern suggesting that Camarena is trying to manipulate the record. Instead, the inconsistencies seem to show that Camarena is less than candid about his alcohol use, a classic symptom of alcoholism.
 
 
 21
 Although Camarena functioned well in his psychiatric evaluations, moreover, Camarena's claim has always been that, although he can go for days or weeks without drinking, he inevitably gets the impulse to drink, and, when he does, he drinks until he blacks out. For this reason, the ALJ does not reason convincingly when he uses the fact that Camarena drinks "episodic[ally]" as a basis for concluding that Camarena can control his drinking. The ALJ ignores the report of Dr. Lau, the most detailed piece of medical evidence in the record concerning Camarena's alcohol abuse. Dr. Lau's report shows that it is precisely the episodic impulse to binge that Camarena has been unable to control. Dr. Lau's report suggests, moreover, that Camarena's binge drinking would prevent him from holding down any sort of job for any length of time. Cf., e.g., Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990) (review on substantial evidence is based on examination of the entire record).
 
 
 22
 Most significantly, the ALJ did not consider a third medical report, dated December 20, 1988, from Dr. Bhoopat. The ALJ apparently did not notice this report, and makes no mention of it in his findings.[3] Dr. Bhoopat describes Camarena as a "chronic alcoholic." AR at 268. This is significant because "[a] diagnosis of chronic alcoholism usually means that the alcoholic is addicted to alcohol and is unable voluntarily to control alcohol use. As we have said before, 'some alcoholics can stop; more cannot.' " Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir.1987) (citations omitted). On appeal, Camarena, with the permission of this court, has supplemented the record with yet another medical report. Although the new evidence, in itself, would not warrant a remand,[4] it adds one additional factor to the mix: in the family history section of the report, the physician notes that Camarena had two brothers, both of whom died from alcohol abuse.
 
 CONCLUSION
 
 23
 We vacate the grant of summary judgment and remand to the district court with directions to remand the case to the Secretary for reconsideration of Camarena's claim of psychological impairment based on chronic alcohol abuse. The Secretary's determination of whether Camarena has the ability to control his alcohol intake must be based on an evaluation of the entire record, including the medical evidence not considered below. We also direct that, if the Secretary determines that Camarena is eligible for benefits, the Secretary should consider conditioning benefits on Camarena's receipt of treatment for alcoholism. See Kellar v. Bowen, 848 F.2d 121, 124 (9th Cir.1988) (remanding alcoholism claim with stipulation that Secretary should consider conditioning benefits on receipt of treatment); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir.1987) ("Given the nature of alcoholism, awarding benefits may not help the claimant if he or she spends the money on alcohol, exacerbating the disabling condition.... We now endorse [the approach adopted by several other circuits], and require the Secretary to consider on remand [conditioning benefits on receipt of treatment].").
 
 
 24
 REVERSED AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The excerpts of record requirement was waived in this case. References to the administrative record before the district court record are to AR
 
 
 [2]
 This court also notes that Camarena's claim that the legal advocate who assisted him at his hearing was inadequate is entirely without merit. Camarena had no right to counsel before the ALJ. The advocate that argued on his behalf, moreover, largely succeeded in focusing the ALJ's attention on Camarena's strongest claim, his alcohol abuse claim. The fact that the ALJ ultimately ruled against Camarena in no way suggests that the hearing was tainted by the participation of the advocate
 
 
 [3]
 This record apparently was filed with the ALJ by Camarena's legal advocate on July 5, 1989, a month before the hearing. See AR at 277-78 (letter from Camarena's advocate to the ALJ attaching the document which contains a copy of the record). Although this report is generally consistent with the other medical reports, the ALJ's failure to acknowledge it suggests that his review of the record was less than thorough. The same conclusion applies to the district court's review below and to that of government counsel in the present appeal. The government goes so far as to assert that the district court's failure to take Dr. Bhoopat's report into consideration cannot be error because the report did not exist in the record
 
 
 [4]
 See, e.g., Wainwright v. Secretary of Health & Human Servs., 939 F.2d 680, 682 (9th Cir.1991) (a remand based upon new evidence is appropriate only upon a showing that the new evidence is "material" and that there is "good cause" for failure to introduce the evidence in a prior proceeding); see also Georg v. Schweiker, 643 F.2d 582, 584 (9th Cir.1981) (finding jurisdiction to remand for consideration of evidence discovered after appellate briefs had been filed)