85 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Larry BRADSHAW, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-17140.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 14, 1996.[1]
Decided May 9, 1996.
 
 1
 Before: HALL and BRUNETTI Circuit Judges, and WEINER,[2] Senior District Judge.
 
 MEMORANDUM[3]
 
 2
 Larry Bradshaw appeals from a district court order affirming a decision of an ALJ, determining his onset date for Social Security Disability benefits as January 1, 1988. Bradshaw avers his disability, due to a mental disorder, substance abuse and back pain, began in 1983. The district court had jurisdiction over this matter pursuant to 42 U.S.C. § 405(g); this court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons which follow, the order of the district court is affirmed.
 
 
 3
 To qualify for disability benefits under the Social Security Act, an applicant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(2)(A). The applicant's physical or mental impairments must "result[ ] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 324(d)(3). An applicant is considered under a disability and entitled to benefits only if his physical or mental impairment prevents him from doing his previous work, or any other substantial gainful work appropriate for someone of his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).
 
 
 4
 The ALJ determined that Bradshaw was under a disability since January 1, 1988, but not prior thereto.[4] Bradshaw argues that the ALJ: (1) improperly disregarded the opinion of his treating physician regarding the onset date; and (2) disregarded evidence that Bradshaw's drinking pattern was chronic and severe. After a thorough review of the record, we find these arguments are without merit.
 
 
 5
 The ALJ's finding that the appellant was not disabled prior to January 1, 1988 is supported by substantial evidence. The ALJ made a detailed and thorough written summary of the medical record, an interpretation of that record and his findings. When evaluating the evidence of an applicant's impairment, the Secretary must afford greater weight to a treating physician's opinion than that of an examining physician, because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." McAlister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir.1989); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987). An ALJ may, however, disregard the treating physician's testimony. If the treating physician's testimony is uncontroverted, the ALJ may reject it provided he presents clear and convincing reasons for doing so. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). But, to reject a treating physician's opinion that conflicts with an examining physician's opinion, the ALJ must make findings setting forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Baxter, 923 F.2d at 1396; Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987).
 
 
 6
 The evidence that Bradshaw was disabled prior to 1988 consists primarily of the opinions of two treating physicians, Dr. Mehtani and Dr. Wahba, formed during approximately two months of treatment in 1983. In January 1983, Dr. Wahba diagnosed Bradshaw as suffering from a generalized anxiety disorder, ego-dystonic homosexuality, a history of alcohol and marijuana abuse, as well as possible anti-social personality and narcissistic personality disorder. Wahba also opined in 1983 that Bradshaw could function in simple clerical jobs, provided he took psychotropic medication. Dr. Mehtani's notes from 1983 do not indicate a diagnosis of mental disorder, but do point out that Bradshaw was undergoing vocational rehabilitation. In addition, the notes indicate that Mehtani agreed to start Bradshaw on anti-depressant medication, at the claimant's own request, even though there was no definitive indication for it.
 
 
 7
 After March 1983, Bradshaw did not seek treatment for emotional problems again until October 1986, when he underwent a psychological evaluation in connection with his second application for disability benefits. The examining psychologist, Dr. Campos, concluded Bradshaw showed good mental ability, without any significant signs of organic brain syndrome. His cognitive ability might have been rendered inefficient, however, by some personality pathology, whose nature was not clear because of the possibility Bradshaw invalidated the personality inventory with a strong "fake bad" response set. Campos' impression of Bradshaw was that he may have a border-line personality disorder, but was capable of handling his own affairs.
 
 
 8
 The remaining medical evidence of disability arises after January 1, 1988. Based on this evidence, the ALJ retained the services of Dr. James Shoemaker to determine when Bradshaw's mental impairment first achieved a disabling level of severity. Shoemaker found that, although Bradshaw had long-standing mental problems, dating at least as early as 1983, his condition did not become disabling until 1988. The only evidence contradicting Shoemaker's conclusion is the report submitted by Dr. Mehtani in 1992, some ten years after he originally treated Bradshaw. Mehtani had not seen Bradshaw in the interim and did not examine him before filing his report. Based on his recollection of the case and review of his records, he concluded that Bradshaw suffered from Chronic Generalized Anxiety and Depressive Disorder since 1981. The ALJ discounted this opinion based on the remoteness of the treatment, the lack of any significant rationale or reference to medical findings in support of the conclusions reached, and the inconsistency of the conclusions with other evidence of record, including Mehtani's own treatment notes from the early 1980's, as well as contemporaneous statements given by the claimant himself.
 
 
 9
 The district court held, and we agree, that the ALJ was within proper bounds when he discounted Dr. Mehtani's opinion. The ALJ stated specific, legitimate reasons, based on the substantial evidence of record, for assigning Mehtani's opinion little weight: i.e. that Mehtani's 1992 opinion discloses no medical findings, and is inconsistent with his earlier treatment notes. We hasten to add that this Court has recognized that "[a]fter-the-fact psychiatric diagnoses are notoriously unreliable." Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984).
 
 
 10
 We also find no error in the ALJ's determination that Bradshaw was not impaired as a result of alcohol and substance abuse prior to 1988. Even with no evidence of physiological damage, uncontrollable addiction to alcohol has been found disabling under the Act. Cooper v. Brown, 815 F.2d 557, 560 (9th Cir.1987). But, to support a finding of disability due to alcohol or substance abuse, the claimant must show that he is addicted to alcohol, and as a result, does not have the ability to control its use voluntarily. Id. at 560. Once a claimant introduces evidence of diagnosed alcoholism, the Secretary must inquire into the extent of the claimant's ability to control his alcohol or substance abuse. Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir.1990); Cooper, 815 F.2d at 561. "The Secretary, or the ALJ whose decision the Secretary adopts, must make a specific finding on the claimant's ability to control his or her drinking and its disabling effect." Cooper, 815 F.2d at 560. The ultimate burden of proving the disability remains with the claimant at all times. Tylitzke v. Shalala, 999 F.2d 1411, 1415 (9th Cir.1993). Even uncontrolled drinking does not necessarily constitute a disability; the alcoholism or substance abuse must still be found to prevent the claimant from performing substantial gainful activity. Id.
 
 
 11
 Although somewhat disjointed, Bradshaw appears to make two arguments related to the ALJ's consideration of his addictions: that the evidence shows his drinking pattern is chronic and severe, and that the ALJ improperly based his decision that Bradshaw's addictions were not disabling on Bradshaw's own denials of abuse. There is, however, no attempt by the claimant to support these arguments with specific citations to the record of evidence of disabling addictive behavior prior to 1988.
 
 
 12
 Several cases have held that an ALJ must not base the decision that a claimant is not disabled by alcoholism on the claimant's own testimony that he is not addicted and can control his or her drinking. See, Brown v. Heckler, 713 F.2d 441, 442-3 (9th Cir.1983) (citing Ferguson v. Schweiker, 641 F.2d 243, 249 (5th Cir.1981) (recognizing that because of an alcoholic's tendency to deny or rationalize his abuse, "a finding that an individual is not disabled by alcoholism cannot rest solely upon the testimony of the individual himself.")). The ALJ is not prohibited from considering such testimony; but "because of alcoholics' propensity for downplaying the adverse effects of their drinking, such testimony should not be given undue weight in the face of medical evidence to the contrary." Young v. Heckler, 803 F.2d 963, 966 (9th Cir.1986).
 
 
 13
 While the ALJ does cite as support for his decision the claimant's statements that his addictive behavior was "off and on" and that he never considered himself addicted in the sense that he was unable to voluntarily control his drug and alcohol use, this was not the sole basis of his determination; the substantial evidence of record supports the ALJ's ultimate conclusion that Bradshaw's addictive behavior did not constitute a severe impairment prior to 1988. The ALJ inquired into the extent of Bradshaw's ability to control his alcohol and substance abuse and made a specific finding that his drug and alcohol usage did not prevent him from engaging in substantial gainful activity during that time period. The record reveals that, although Dr. Mehtani's treatment notes from January 1983 indicated a previous history of abuse, his treatment notes from March 1983 indicated Bradshaw reported no recent use of alcohol or drugs. Moreover, Mehtani opined at that time that Bradshaw was capable of performing simple clerical jobs. Although Bradshaw claimed daily use of marijuana to Dr. Campos in 1986, the psychologist noted that any use had not resulted in deterioration of personal habits or social activity. The balance of the medical evidence of record does not indicate addictive behavior prior to 1988 that could not be voluntarily controlled.
 
 
 14
 As the ALJ's decision to deny Bradshaw SSI benefits prior to January 1, 1988 was supported by substantial evidence, we affirm the order of the district court upholding the decisions of the ALJ and the Appeals Council.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 [2]
 Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [3]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [4]
 Bradshaw filed his application for SSI benefits on February 22, 1983. He has been litigating his entitlement to benefits and disability onset date ever since. He has had four hearings before an ALJ; his claim has been remanded by the Appeals Council on three occasions and remanded by the district court on one additional occasion