**Judy TRUITT, Plaintiff,**

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.**

**No. Civ. 98–6160–JO.**

United States District Court, D. Oregon.

March 9, 1999.

view was denied by the Commissioner on April 2, 1998. On June 1, 1998, the Appeals Council vacated that decision to consider additional evidence. Nonetheless, the ALJ's decision became the final decision of the Commissioner on June 1, 1998, when the Appeals Council again declined review.

Brent Wells, Johnson Cram Harder & Wells, Eugene, OR, for plaintiff.

William W. Youngman, Assistant United States Attorney, United States Attorney, Portland, OR, Javes Myung, Office of General Counsel, Social Security Administration, Seattle, WA, for defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Claimant Judy Truitt seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits ("SSI") under §§ 1602 and 1604(a)(3)(A) of the Social Security Act.

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the Commissioner's judgment is AFFIRMED.

## ADMINISTRATIVE HISTORY

Claimant filed an application for SSI on February 25, 1995. The application was denied initially and on reconsideration. On December 11, 1996, a hearing was held before the administrative law judge ("ALJ") in which claimant (represented by attorney Brent Wells), Steven A. Task, M.D., internal medicine expert, Larry S. Hart, Pd.D., medical expert in psychology, and a vocational expert testified. On February 26, 1997, the ALJ issued a finding of no disability and denied the benefits sought. Claimant's initial Request for Re-

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala,* 999 F.2d 1411, 1413 (9th Cir.1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. *See* 20 C.F.R. §§ 404.1520 and 416.920. The ALJ determined that claimant had not engaged in substantial gainful activity since January 30, 1995.

Second, the ALJ found that claimant has severe low back pain and fibromyalgia, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17.) The ALJ also found that claimant's alleged somatoform disorder and depression imposed only slight limitations and were therefore nonsevere. (Tr. 19–20, 23–26.)

In the next step of the evaluation, the ALJ determined that claimant retains the residual functional capacity to perform the full range of light exertional work. The ALJ found claimant's subjective complaints not to be fully credible in light of the objective medical evidence.

Based upon the testimony of a vocational expert, the ALJ determined that the claimant is able to perform the full range of light work and her impairments did not prevent her from returning to her past relevant work as either a cashier or light production assembly worker. These jobs all exist in significant numbers in the national economy. Based on these determinations, claimant was found not to be disabled as defined by the Social Security Act, and her application for benefits was denied.

### STATEMENT OF FACTS

Claimant was born on July 1, 1945. She has 11 years of education. Her work history includes semi-skilled work experience as a cashier and sedentary to light unskilled work as a light production assembly worker. Her last date of substantial gainful employment was January 30, 1995. Claimant has engaged in work activity since her application date as a caregiver for senior citizens on a part-time basis. This work was for monetary amounts that are presumptively not substantial gainful activity. Claimant alleges inability to work as of January 30, 1995, based on low back pain, fibromyalgia, depression and somatoform disorder.

### Medical History

Claimant asserts she initially injured her lower back while on the job December 7, 1993. (Tr. 67, Tr. 114.) On January 11, 1994 claimant saw Dr. William R. Ferguson regarding her back pain. Dr. Ferguson attempted to treat claimant until January 26, 1995. Dr. Ferguson opined, "[a]t this point in time this is a very difficult patient. She obviously shows no inclination to go back to her job. She has no inclination to work in a work hardening program and to get better." (Tr. 154.) He also noted that there was no evidence of underlying significant disease. (Tr. 154.)

On February 23, 1994 claimant was referred to Dr. K. Clair Anderson, an orthopedist, who diagnosed her with probable lumber sprain and strain[1] and recommended physical therapy. (Tr. 229.) Dr. Clair saw claimant again on March 16, 1994, and noted she was going to have to work more vigorously with her physical therapy. (Tr. 230.) Dr. Clair strongly advised that claimant participate in a work hardening program because it was the only treatment he thought would make a significant change. Claimant said she was uncertain she wanted to participate in the program. (Tr. 231.) In his March 22, 1994 report, Dr. Clair noted claimant "may have a very mild sclerosis. Otherwise, I don't appreciate any significant bony abnormality."[2] (Tr. 232.)

On April 26, 1994, claimant saw Dr. Frank Lahman, a psychologist. Dr. Lahman opined that claimant tended to overstate the severity of her pain. (Tr. 145.) He noted

> In spite of the severity of the pain complaints reported, the profile was suggesting very little actual psychic distress from these problems and a likelihood that she has adapted well to the role of pain patient with strong needs for dependency being one of the major driving forces behind this approach to meeting life's demands.

(Tr. 145.)

Dr. Lahman diagnosed claimant with Somatoform. Pain Disorder.

---

1. This portion of the diagnosis was marked out in the transcript copy. Claimant attached unmarked copies of this document to her request for review.

2. This portion was also marked out in the transcript copy and claimant provided the court with unmarked copies.

In January 1995, claimant began seeing Dr. Rose Miller. On February 10, 1995, Dr. Miller wrote that claimant had negative EMG's and no real joint signs or symptoms. (Tr. 162.) On May 1, 1995, Dr. Miller noted that she suspected claimant's back pain is mostly muscular and certainly could be related to fibromyalgia. "This is difficult to assess as residual injury after two years."[3] (Tr. 164.) On May 1, 1995, Dr. Miller wrote and initialed on a lumbosacral spine x-ray that there were "NO ACUTE PROBLEMS OR DISEASE, RCM." (Tr. 168.)

In April 1996, claimant began seeing Dr. Karen Hansen–Smith who said that claimant did not necessarily fit the pattern for fibromyalgia.[4]

On September 6, 1995, Dr. Miller stated that claimant resisted doing her prescribed physical exercises, psychological counseling, and seeking out less strenuous employment. (Tr. 190.)

On October 9, 1996, Dr. Lahman again evaluated claimant at the request of the agency. (Tr. 195.) Dr. Lahman was asked to address the issue of claimant's exaggeration and malingering. He stated, "I believe that the over focus on pain is primarily an unconscious means of coping with life's stressors. This is currently mixed with a very conscious and deliberate effort to obtain financial benefits for what she perceives as a physical disability." (Tr. 197.)

On October 10, 1996, the agency requested Dr. Lahman complete the Medical Assessment of Ability to Do Work Related Activities (Mental). (Tr. 200–202.) Dr. Lahman classified claimant's ability to make occasional adjustments on the job as unlimited (more than satisfactory) in six categories, and good (limited but satisfactory) in the categories of (1) dealing with stressors and (2) maintaining concentration. He assessed claimant as unlimited in her ability to make performance adjustments and good at understanding, remembering and carrying out complex job instructions. Additionally, he stated that claimant was unlimited in making personal-social adjustments. He concluded, "[h]er main impairment is her belief that she is impaired. Physical findings don't support her pain complaints and purported limitations." (Tr. 201.)

On October 11, 1996, Dr. Robert Lutz, a colleague of Dr. Hansen–Smith, wrote to claimant's counsel regarding her limitations. (Tr. 203.) Based on her subjective complaints, Dr. Lutz opined that claimant would be unable to adhere to the work requirements of sedentary work. (Tr. 203.)

On December 4, 1996, Dr. Hansen–Smith responded to a letter from claimant's counsel, "[a]fter having seen this person as a patient for the last 8 months, I concur with Dr. Lutz's assessment of her current physical abilities. Her main problems/deterrents to work are an ill-defined musculoskeletal syndrome likely exacerbated by her depression." (Tr. 224.)

### Hearing Testimony

During the hearing on December 11, 1996, claimant testified that she experiences weakness in her hands, has a tendency to drop things, and her muscles tighten up into knots. (Tr. 68.) She claims she experiences pain in her upper back, lower back, arms and hands. Claimant also asserts she is tired and has no energy. (Tr. 69.) She also claimed that she feels weak after standing for an hour and is forced to sit or lie down. (Tr. 71.) She claims she feels cramped and sore if she sits for longer than an hour and a half.

The claimant also alleged that because of her pain and weakness, she can do very little around the house and has discontinued all previous hobbies and social activi-

---

**3.** Referencing December 7, 1993, the date of the initial injury to claimant's back.

**4.** In this report, Dr. Hansen–Smith referred to a diagnosis made by Dr. Samuel Kaye on December 4, 1995, which also said that claimant did not meet the criteria for fibromyalgia.

ties. However, she admitted to doing light housecleaning upon rising in the morning, cooking for herself without difficulty, grocery shopping twice monthly, watching television, reading, walking on a daily basis, driving for up to an hour at a time and weekly visits with family and friends. (Tr. 66–81.)

Dr. Steven A. Task testified as an expert in internal medicine. After reviewing the entire medical record, Dr. Task opined that claimant is capable of performing light exertional work. Dr. Task noted that the objective findings in Dr. Lutz's October 11, 1996 report were not at odds with the conclusion claimant could do light work.[5] Dr. Task also stated that "[t]he physical findings don't seem to support the pain complaint." (Tr. 46.)

Dr. Task also discussed the Physical Capacity Assessment (Tr. 173–180), which showed an ability to perform somewhat less than the full range of light exertional work. He noted that because this assessment was completed by an occupational therapist, it should not be accorded as much weight as those completed by physicians. Furthermore, the testing cannot be considered reliable because the claimant reportedly gave less than her best effort out of fear of increased pain. (Tr. 43–49.)

Larry S. Hart, Ph.D., testified as a medical expert in psychology. (Tr. 43–66.) Dr. Hart testified that the record reflects two diagnoses of mental impairment: (1) a depressive disorder and (2) a somatoform pain disorder. Dr. Hart noted that the depressive disorder was diagnosed by a treating physician rather than a psychologist or psychiatrist, and that the record contains little information about the disorder other than the prescribing of medication.

Dr. Hart also testified that the somatoform disorder has characteristics of a conversion disorder whereby the claimant's psychological difficulties are internalized and may manifest in terms of physical complaints. Dr. Hart referenced Dr. Lahman's previous findings to illustrate how the claimant's perception that she is disabled is at variance with that of her treating physicians. Dr. Hart opined that this is due to a combination of unconscious factors and deliberate efforts to obtain financial benefits. Dr. Hart also noted that Dr. Lahman assigned a Global Assessment of Functioning score of 65, which is well within the range of employability. (Tr. 147.)

A vocational expert also testified. The vocational expert classified the majority of claimant's past relevant work experience as a cashier as a light, semi-skilled position which requires little lifting. (Tr. 82.) The vocational expert also testified that claimant's other position as a light production assembly worker is a sedentary to light, unskilled position that would provide an option to alternatively sit and stand. (Tr. 83.)

The ALJ then posed a hypothetical question to the vocational expert, asking her to assume an individual of similar age, education and work experience as claimant. (Tr. 82–83.)

Based on that hypothetical, the vocational expert testified that claimant would not be precluded from performing her prior work as a restaurant cashier or light production assembly worker. (Tr. 83.) The vocational expert said that claimant could also perform work as a housekeeper (light, unskilled position) or care giver (light, semiskilled position).

## DISCUSSION

Claimant attacks the ALJ's decision on numerous fronts, arguing, among other things, that the ALJ erred in concluding that plaintiff does not suffer from a "severe" mental impairment and in so finding has implicitly rejected the opinion of Dr.

5. Dr. Lutz concluded in his written report, and Dr. Hansen–Smith, claimant's treating physician agreed, that based on claimant's subjective complaints, she would not be able to perform sedentary work without absences. (Tr. 203 and 224.)

Lahman without legitimate reason. Additionally, claimant argues the ALJ improperly rejected the opinions of Dr. Lutz and Dr. Hansen–Smith regarding claimants limitations, used improper criteria in rejecting claimant's pain testimony, and failed to adequately develop the record.

### 1. *Did the ALJ err in finding the claimant did not have a severe mental impairment?*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for a continuous period of not less than twelve months. It also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experience, engage in any other substantial gainful work which exists in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.1990); 42 U.S.C. § 1382c(a)(3)(A).

Claimant has not challenged the ALJ's findings concerning her physical impairments. Instead, claimant argues the ALJ erred in finding claimant's alleged mental impairments, somatoform disorder [6] and depression [7], imposed only slight limitations and were therefore non-severe. (Tr. 19–20, 23–26.) The ALJ's decision was supported by substantial evidence in the record and is therefore affirmed.

Claimant argues in her reply brief that the Commissioner does not accept somatoform disorder as a mental illness. (pg.2)

This argument is incorrect. The ALJ noted numerous physicians' assessments that claimant's symptoms were a combination of (1) a belief that she was disabled and (2) a deliberate effort to obtain financial benefits. Claimant may suffer from some form of somatoform disorder or depression but this does not mean that her afflictions impose severe limitations on her ability to work.

An impairment or a combination of impairments is considered severe when it significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921. Dr. Hart testified that claimant suffered from an affective disorder but concluded that her symptoms were minimal and did not significantly limit her. (Tr. 55.) Dr. Lahman, whose diagnosis claimant asserts establishes disability, gave claimant a score of 65 on the Global Assessment of Functioning form which is indicative of only mild psychological symptoms. (Tr. 147.) *see Diagnostic and Statistical Manual of Mental Disorders (DSM–IV)* 32 (American Psychiatric Association) (1994).

Dr. Lahman also completed a Mental Assessment of Ability to Do Work Related Activities form and determined that claimant generally was "unlimited" or had "very good" ability to deal with work related activities.[8] (Tr. 200–202.)

Claimant next argues that Drs. Miller's and Hansen–Smith's diagnoses of depressive disorder establish disability. This claim is not supported by the record. First, if claimant suffers from depression, the ALJ's conclusion that it is not severe is supported by substantial evidence. Sec-

---

**6.** *Somatoform Disorders* are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R.Pt. 404, Subpt. P, App. 1, § 12.07.

**7.** *Affective Disorders* (e.g., depression) are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. 20 C.F.R.Pt. 404, Subpt. P, App. 1, § 12.04.

**8.** Dr. Lahman classified claimant's ability as very good (having only mild limitations), in the areas of dealing with work stress, maintaining attention and concentration, and following detailed instructions. (Tr. 200–202.)

ond, Dr. Lahman, an examining psychologist, did not diagnose claimant with depression. (Tr. 197.) Third, the record is silent as to the nature and/or impact of this claimed disorder on claimant's ability to work. Fourth, Dr. Hansen–Smith noted that claimant's depression merely exacerbated the ill-defined musculoskeletal disease. (Tr. 224.) Because claimant has proceeded only on the theory of severe mental disability, the record leaves her with only an exacerbating factor to a non-existent physical disability. An "exacerbating" mental ailment is not the equivalent of a "severe" mental disability.

Based on substantial evidence in the record, the ALJ correctly determined that claimant was not severely disabled. In so finding, this court finds it unnecessary to address claimant's remaining arguments.

### CONCLUSION

Based upon a review of the record, the Commissioner's decision denying claimant SSI benefits is supported by substantial evidence and is hereby AFFIRMED.

### *JUDGMENT*

Based upon the record,

IT IS ORDERED AND ADJUDGED this case is dismissed. Any pending motions are denied as moot.