**Connie JERRY, Plaintiff,**

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.**

**No. 99–305–JO.**

United States District Court, D. Oregon.

April 3, 2000.

Alan S. Graf, Swanson Thomas & Coon, Portland, OR, for plaintiff.

William W. Youngman, Assistant U.S. Attorney, District of Oregon, U.S. Attorney's Office, Portland, OR, Lucille G. Meis, Social Sec. Admin., Office of General Counsel, Seattle, WA, for defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Claimant Connie Jerry seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying disability insurance benefits ("DIB") and supplemental security income ("SSI") because claimant is not disabled under the Social Security Act. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, this court concludes that the Commissioner's decision is not supported by substantial evidence in the record and must be remanded.

## ADMINISTRATIVE HISTORY

Claimant first applied for SSI and DIB on August 7, 1995, alleging disability beginning February 12, 1995. She attended a hearing with her attorney, held before Administrative Law Judge (ALJ) Joseph Schloss, on April 15, 1997. The Commissioner denied her application in a hearing decision issued July 23, 1997. Claimant appealed. On January 19, 1999, the Appeals Council denied claimant's request for review, rendering the ALJ's decision final. Claimant now challenges that decision.

## STANDARDS OF REVIEW

This court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala,* 999 F.2d 1411, 1413 (9th Cir.1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989).

A claimant bears the initial burden of proof to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected * * * to last for a continuous period of not less than 12 months * * *." 42 U.S.C. § 423(d)(1)(A).

## SUMMARY OF THE ALJ'S FINDING

The ALJ employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. *See* 20 C.F.R. §§ 404.1520 and 416.920. The ALJ first determined that claimant had not engaged in substantial gainful work activity at any time since February 12, 1995. Second, the ALJ found that claimant's degenerative disease of the cervical spine constituted a severe impairment. Next, the ALJ found that claimant's impairment did not equal a "Listed Impairment." In step four, the ALJ concluded that claimant was unable to perform any of her past relevant work. In step five, the ALJ found that claimant is able to perform substantial gainful activity in a significant number of other jobs. Accordingly, the ALJ determined that claimant is not disabled and not entitled to DIB or SSI.

## RELEVANT FACTS

Claimant was 46 years old a the time of her hearing. She has a ninth grade education and extensive prior work experience working in a family owned tree nursery business. She left work at the nursery in

1990 after a divorce and worked for Wal-Mart and Super 8 Motels before developing debilitating health problems.

Claimant attends the Oregon Health Sciences University, where Adult Nurse Practitioner (A.N.P.) Laura Renner has administered her primary care since March, 1996. After an initial evaluation which included a review of claimant's medical records, Ms. Renner diagnosed claimant as suffering from degenerative joint disease of the cervical spine, with radiculopathy.[1] Ms. Renner ordered thoracic X-rays to confirm her diagnosis of degenerative joint disease. Those X-rays were inconclusive, but did not document any advanced osteoarthritis.

In a March 20, 1996, letter to claimant's attorney, Ms. Renner wrote that claimant suffered from neck pain and chronic numbness of her left hand due to nerve impingement caused by osteoarthritis involving cervical vertebrae 5 through 7. Tr. 269.

In a follow-up appointment, on April 15, 1996, Ms. Renner reported that claimant relied on Ultram and Tylenol every six hours to treat her chronic pain. She also noted that claimant exhibited normal strength, sensation and range of motion in her upper extremities. Tr. 287. Ms. Renner did not prescribe any additional diagnostic testing for claimant.

On April 17, 1997, Ms. Renner completed a Physical Residual Functional Capacity Questionnaire prepared by claimant's attorney. In that questionnaire, Ms. Renner reported that claimant suffered neck pain, radiating to her arms and back, due to degenerative disc disease in vertebrae C5–C7. She wrote that her diagnosis was based upon X-ray films taken on April 13, 1994, July 5, 1994, and March 14, 1996. Tr. 309. Ms. Renner indicated claimant's

prognosis for progressive back, arm and neck pain, exacerbated by cold, heavy lifting and repetitive movements of the upper extremities. She also noted that claimant's limited cognitive abilities would prevent extensive mental retraining. Tr. 309. Dr. Coodley, a staff physician at OHSU, co-signed the questionnaire.

At the hearing, the ALJ rejected the medical opinions of Ms. Renner because she is not a licensed physician, and because he found that her diagnoses were without sufficient objective findings. He referred claimant for a post-hearing evaluation of her degenerative joint disease.

Dr. Crawford evaluated claimant post-hearing, on May 9, 1997. Based upon claimant's symptoms, medical records and clinical presentation, Dr. Crawford discounted Ms. Renner's diagnosis of radiculopathy, but diagnosed claimant as suffering from carpal tunnel syndrome. She also observed that claimant had symptoms suggesting a brain stem disorder and concluded that claimant would be unsuited for an occupation where she would be required to do calculations, reading or writing, or speaking to the public.

In the decision, the ALJ rejected Dr. Crawford's diagnosis of carpal tunnel syndrome and partially rejected her diagnosed functional limitations. He reasoned that Dr. Crawford's diagnoses were based upon claimant's subjective complaints only[2] and, even if claimant did have carpal tunnel syndrome, the condition could be resolved in less than twelve months. Accordingly, the ALJ found that claimant retains the residual function capacity to perform sedentary work and a limited range of light work and, therefore, is not disabled.

---

1. Radiculopathy is characterized by acute, subacute or chronic neck pain radiating into the shoulder, sometimes accompanied by weakness of upper arm abduction and external rotation and numbness over the lateral part of the upper arm. The condition generally is caused by degenerative disc disease or osteoarthritis.

2. Defendant concedes in his response that Dr. Crawford's diagnosis of carpal tunnel syndrome was not based entirely on subjective symptoms. Defendant's Memorandum, 16.

## DISCUSSION

### A. *Opinions of Claimant's Primary Care Provider*

Claimant alleges that the ALJ erred when he discounted the opinions and diagnoses of her primary care provider, Ms. Renner, because she is not a medical doctor. Tr. 17. Claimant argues that Ms. Renner's conclusions are entitled to the same weight given the testimony of a treating physician.

The social security regulations distinguish between "medical sources" and "other sources." 20 C.F.R. §§ 404.1527, 416.927. The ALJ must not reject opinions from medical sources without giving specific reasons, whereas he may reject the opinions of "other sources" without explanation. *Id.*

In the Ninth Circuit, a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not. *Gomez v. Chater,* 74 F.3d 967, 971. Under this clearly stated rule, Ms. Renner constitutes an acceptable medical source. She does not practice alone, rather she is on staff at OHSU. The medical records show that licensed physicians reviewed Mr. Renner's patient evaluations. A licensed physician also cosigned claimant's Physical Residual Functional Capacity Questionnaire, which Ms. Renner prepared on April 1, 1997. Because Ms. Renner belongs to a multidisciplinary staff including licensed physicians who reviewed her work and because Dr. Coodley cosigned Ms. Renner's evaluation of claimant, Ms. Renner qualifies as a medical source. Moreover, because she examined claimant in the OHSU clinic at least eight times between March, 1996, and April, 1997, and is the person most familiar with claimant's clinical history, her opinions and conclusions must be evaluated in the same manner the Administrator evaluates opinions of a treating medical source. *See* 20 C.F.R. §§ 404.1527, 416.927.

 Although the ALJ erred in not crediting Ms. Renner as a medical source, that error was harmless because he also gave clear and convincing reasons why he did not find her opinions compelling. Under the regulations, the opinion of a treating medical source is controlling, provided that the treating source's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2); *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). If, however, the treating source's opinion is contradicted by another medical source, the ALJ may reject the treating source's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).

 In this case the ALJ found that the opinions of Ms. Renner were not well supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the opinions of the examining medical source. I find substantial evidence in the record to support the ALJ's decision to discount Ms. Renner's opinions based solely on the lack of supporting data. The ALJ recognized at the hearing that Ms. Renner's diagnoses were based primarily on the claimant's symptoms without the benefit of diagnostic tests commonly relied upon by doctors with expertise in diagnosing claimant's type of illness. The ALJ sent claimant to Disability Determination Services, where neurologist Dr. Crawford contradicted Ms. Renner's diagnosis of radiculopathy. Dr. Crawford found that claimant's x-rays showed only mild degenerative changes, claimant exhibited excellent strength in the upper extremities and full range of motion. Based on her evaluation, Dr. Crawford concluded that claimant more likely suffered from carpal tunnel syndrome than degenerative joint disease.

Tr. 320. Based on her examination, Dr. Crawford concluded that claimant was not limited to the extent reported by Ms. Renner. The evidence contained in the record supports Dr. Crawford's conclusion, and the ALJ did not err in partially rejecting Ms. Renner's opinion, even though Ms. Renner was an acceptable medical source.

### B. *Opinions of the Examining Source*

The ALJ also partially discounted the opinions of Dr. Crawford. Dr. Crawford concluded that claimant could occasionally lift 20 pounds, frequently lift up to 10 pounds, stand or walk up to six hours per day, and sit up to six hours per day with normal work breaks. Tr. 323–23. The ALJ credited all of these findings. Dr. Crawford also diagnosed claimant as suffering from carpal tunnel syndrome, a speech impediment, very poor grammar, and limited intellectual capacity. Dr. Crawford concluded that these impairments significantly limited claimant's ability to push/pull and operate hand controls, communicate, interact with the public, and perform calculations.[3] The ALJ rejected all of these findings. Claimant argues that the ALJ's failure to fully credit the uncontradicted opinions of Dr. Crawford was erroneous.

■ The uncontradicted opinions of an examining medical source are entitled to great weight and the ALJ may reject those opinions only by providing specific, clear and convincing reasons that are supported by substantial evidence. *Smolen v. Chater* 80 F.3d 1273, 1286 (9th Cir.1996). Here, the ALJ found that Dr. Crawford's diagnosed physical limitations were inconsistent with claimant's daily activities, past relevant work, and absence of reliance on strong pain medication. He concluded that Dr. Crawford's diagnosis of the extent of claimant's limitations was exaggerated because claimant exaggerated her symptoms. However, the ALJ's reasons for

discounting the testimony of the examining source are not clear and convincing.

### 1. *Physical Limitations*

The ALJ found that even if claimant's neck and arm pain were attributable to a medically determinable impairment, her complaints were exaggerated and not credible. He based his conclusion on the following factors:

(1) Claimant trains six to eight hours a week, in two- to three-hour daily segments, to be a teachers aide.

(2) Claimant cleans and cooks for herself.

(3) Claimant has a tendency to exaggerate.

(4) Claimant does not require strong pain medication.

■ The first two reasons the ALJ gave are not clear and convincing. Evidence that claimant is able to care for herself and attend 2–3 hour training sessions does not demonstrate that she is capable of working on a sustained basis. *See* 20 C.F.R. § 404.1512(a); *Lester v. Chater,* 81 F.3d at 833 (sporadic ability to work not inconsistent with disability). Furthermore, the ALJ did not point to or explain why any specific activity claimant engages in is inconsistent with claimant's reported and diagnosed limitations.

■ The last two reasons the ALJ gave are not supported by substantial evidence. The ALJ's finding that claimant has a tendency to exaggerate her pain is based on an isolated comment contained in a 1995 evaluation. In that report Clinical Psychologist David Gostnell, Ph.D., wrote:

[claimant's] personality profile suggests that there may be some enhancement of her disability based on personality characteristics, i.e., an exaggeration of disability in response to psychological needs. This point should be given minor emphasis, because her personality profile is of a relatively mild elevation in this direction. Connie gives every evidence that she is highly motivated to

---

**3.** All of the limitations Dr. Crawford attributed to claimant were consistent with, though less severe than, the limitations Ms. Renner diagnosed.

return to work in some capacity, and she is not likely to allow her experience of chronic pain to unnecessarily prevent that from happening.

Tr. 182–183. The above statement, which was qualified at the time it was made, and is inconsistent with the rest of claimant's record, does not constitute substantial evidence of malingering or exaggeration.

■ The ALJ's finding that claimant does not rely on strong pain medication is also unsupported by substantial evidence. Claimant testified that her pain frequently ranked an 8 or 9 on a scale of 1 to 10, without pain medication. She testified that she takes coated aspirin, and three Extra Strength Tylenol for pain. She tried to explain how lack of money limits her access to prescription medication but the ALJ cut her off. Tr. 44.

The Ninth Circuit proscribes the rejection of a claimant's pain testimony for lack of treatment when the record establishes that claimant cannot afford it. *Regennitter v. Commissioner of the Social Security Administration,* 166 F.3d 1294, 1297 (9th Cir.1999) (claimant compensated for inability to afford prescription pain medication by overdosing on large quantities of over-the-counter pain medication). In any case, evidence that claimant takes "only" three Extra Strength Tylenol does not tend to show that she exaggerates her pain.

Because the ALJ's reasons for rejecting the uncontroverted testimony of Dr. Crawford are not clear and convincing, his failure to credit that testimony was erroneous.[4] Accordingly, the ALJ's refusal to credit claimant's limited ability to push/pull or operate manual controls was erroneous.

### 2. *Cognitive Limitations*

■ The ALJ also erred when he failed to credit claimant's diagnosed limitations in communicating, calculating, remembering and interacting with the public. The ALJ found that claimant's past relevant

work showed that she was only minimally limited by her cognitive conditions. I find that the ALJ's reasons for rejecting Dr. Crawford's diagnoses are not supported by substantial evidence.

In the decision, the ALJ compared the diagnostic impressions of psychologist David Gostnell, Ph.D., who evaluated claimant in August, 1995, with Dr. Crawford, who evaluated claimant post-hearing, in May, 1997. Those impressions are largely consistent. Dr. Gostnell diagnosed expressive language disorder, mild impairments in concentration and attention, deficiencies of general knowledge, poor grammar and elementary level academic skills. Tr. 182–84. Dr. Crawford diagnosed a speech impediment, learning disability, poor recall, 9th grade education level, very poor grammar, poor ability to communicate and poor ability to do calculations, read, write or speak to the public. Both examiners felt that her cognitive limitations were significant, though not debilitating. Tr. 182, 320.

In spite of the consistent, un-controverted opinions of Drs. Gostnell and Crawford, the ALJ found that claimant had no significant non-exertional limitations. Tr. 19. ("neither objective testing nor concerns of the doctors show that Ms. Jerry's limited but low average I.Q., limited education, and poor grammar would prevent her from performing a wide range of basic unskilled work activity." Tr. 14).

The ALJ based his decision to discount the testimony of two medical sources on claimant's past work experience as a cashier:

> She has demonstrated mental ability to perform basic work activity in the past (as well as work activity as a cashier which would indicate that she has been able to successfully compensate for some of her communication and academic limitations).

Tr. 14–15. However, at the hearing claimant did not provide any evidence that she

---

4. The ALJ's alternative rationale, that even if claimant does suffer from carpal tunnel syndrome, her symptoms can be resolved in less than twelve months, is also unsupported by substantial evidence. Tr. 14.

had ever worked as a cashier. When questioned about her prior job at Wal-Mart, which claimant listed as "cashier" on her disability application, claimant revealed that she actually *cleaned* and *dusted* the store's cash registers.[5] Because the ALJ's reason for discrediting claimant's diagnosed cognitive impairments is not supported by substantial evidence, his failure to credit them in the analysis was erroneous.[6]

## JUDGMENT

The ALJ erred when he excluded Dr. Crawford's and Dr. Gostnell's uncontroverted opinions of claimant's physical and cognitive limitations without clear and convincing reasons. Because the record does not establish whether claimant is disabled, taking all of claimant's limitations into account, I REMAND this case to the Commissioner for a redetermination of claimant's status, consistent with my findings in this opinion. Specifically, the Commissioner shall repeat step five of the disability

analysis after crediting all of claimant's limitations that were erroneously excluded from the first disability determination.

---

**5.** QUESTIONS OF CLAIMANT BY CLAIMANT'S ATTORNEY?

Q: What did you work, what did you do at WalMart?

A: First I started cleaning registers and I did that a year until I can be able to go to court and do what I needed to do to provide for my family.

Q: Okay. Anything else, did you do anything else?

ALJ: I still don't know what she did at WalMart.

Atty: She said clean registers.

CLMT: I clean registers.

ALJ: Clean registers?

ATTY: Yes.

CLMT: For a whole year so I could go to court to get my—

RE–EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q: Well, when were you a cashier?

A: I was a cashier from 1991 after I had my second hernia operation. I had to have it—.

Q: Well, we didn't ask about your hernia operation.

A: I know, but—

Q: But you were a cashier. Where were you a cashier at?

A: At WalMart.

Q: Okay. And then you went to WalMart later and only cleaned out cash registers?

A: No, I started cleaning resisters because I didn't have—nobody else would hire me because I was self-employed.

Q: Well, what do you do cleaning the cash registers? Dust them?

A: No. You wash them down, you take all the little stickers, you wash down the belts. You take the registers, you clean under the registers. You keep the, you keep the registers clean—

Q: So you're cleaning the cash register area, but you're not cleaning those registers?

A: The area.

Tr. 52–53.

**6.** The claimant further contends that the ALJ erred when he based his disability conclusion upon the Medical–Vocational Guidelines grids instead of consulting a Vocational Expert. However, because I am remanding the ALJ's decision for reconsideration, in light of the errors identified above, claimant's final argument is moot. I note, however, that in reevaluating claimant's disability, the ALJ must not rely on the Guidelines grids unless they completely and accurately represent a claimant's limitations. *Tackett v. Apfel,* 180 F.3d 1094, 1101–02 (9th Cir.1999).